GRAVES v. KNIGHTS OF THE MACCABEES OF THE WORLD.

(Supreme Court, Appellate Division, Third Department. November 11, 1908.)

1. WORDS AND PHRASES—"ENGAGE."

The word "engage" means "to take a part; to devote attention and effort; to employ one's self; to enlist; to carry on; to conduct; be busied; to occupy one's self."

[Ed. Note.—For other definitions, see Words and Phrases, vol. 3, pp. 2392–2394; vol. 8, pp. 7649–7651.]

2. WORDS AND PHRASES—"BUSY."

"Busy" means "actively or attentively engaged; closely occupied, mentally or physically; opposed to idle; in constant or energetic action; filled with active duties or employment."

3. INSURANCE (§ 748*)—MUTUAL BENEFIT—CONSTRUCTION OF POLICY—FORFEITURE—CHANGE OF OCCUPATION—"ENGAGED."

A by-law of defendant fraternal benefit association barred from admission to the order persons "engaged" in blasting, coal mining, manufacturing explosives, etc., or who were "engaged" in any other occupation deemed extrahazardous by its medical examiner, or who were "engaged," either as principal, agent, or servant, in the sale of liquor as a beverage, and, should any member "engage" in any of the prohibited occupations, his membership certificate should be void. Before his death, insured and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

his son opened a saloon as copartners; the license being issued in their joint names. Insured was pecuniarily interested therein, but performed no labor in or about the saloon and took no active part in the business. *Held* that, giving the word "engaged" the same meaning throughout the clause and construing it most favorably to plaintiff, insured was not "engaged" in the liquor business, within the meaning of the policy; the general intent of the policy being to prohibit members from engaging in occupations which increased the risk.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 748.*]

4. INSURANCE (§ 726*)—CONSTRUCTION—CONSTRUCTION FAVORABLE TO INSURED.
    If a condition in an insurance policy is susceptible of two interpretations, it should receive that which is most favorable to insured, since the company is responsible for the language used in the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1870; Dec. Dig. § 726.*]

Smith, P. J., dissenting.

Appeal from Trial Term, Onondaga County.

Action by Electa R. Graves against the Knights of the Maccabees of the World. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appealed. Affirmed.

See, also, 126 App. Div. 926, 111 N. Y. Supp. 1121.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Love & Keating (George P. Keating, of counsel), for appellant.
Frank C. Sargent and Frank R. Lennox, for respondent.

COCHRANE, J. This is an action on two policies or certificates of insurance issued by the defendant on the life of plaintiff's husband. The defendant is a fraternal beneficial society existing under the laws of Michigan. The insured died in June, 1905. The first certificate on his life was issued in 1893 for $1,000. In 1896 this was increased to $3,000. In 1898 this was replaced by another certificate to other beneficiaries, and four days before the death of the insured another certificate for the like amount of $3,000 was issued; the apparent object being to change the beneficiaries. It is alleged in the complaint and conceded by the answer that this last certificate contained all the provisions of the former, "and it took the place of such said certificate." Another certificate for $2,000 was issued in 1896. On these two outstanding certificates, with interest, plaintiff has recovered.

In 1895 defendant enacted a by-law as follows:

"No person shall be admitted as a beneficial member of this order who is engaged in any of the following occupations: Blasting, coal mining, submarine operations, manufacturing highly inflammable or explosive materials, nor who is an aeronaut or lineman in the employ of electric companies, either in the construction or repairing of lines over which the electric current passes, or who is engaged in any other occupation deemed extrahazardous by the supreme medical examiner, and no person shall be eligible for membership in the order who is engaged either as principal, agent, or servant in the manufacture or sale of spirituous, malt, or vinous liquors as a beverage, and should any beneficial member of the order engage in any of the above-named prohibited occupations after his admission, his benefit certificate shall become null and void from and after the date of his so engaging in such pro-

hibited occupation, and he shall stand suspended from all rights to partici-
pate in the benefit funds of the order."

The defense is that the insured violated this by-law by engaging in
the saloon business. About six months before his death he, with his
son as copartner, opened a saloon. The license was issued in their
names jointly, and there is no question about his pecuniary interest in
the business. It appears, however, that the deceased did not attend
bar, or perform manual labor in the saloon, or take any part in the
business, except to have his financial interest therein. His health be-
gan to fail before going into that business, and continued to fail until
he died. He lived in the building over the saloon.

The question turns on the word "engaged" as used in the said by-
law. Plaintiff claims that it means an active or physical management
or connection with the liquor business, and not merely a pecuniary
interest. In 15 Cyc., at page 1047, the word "engage" is defined as
follows:

"To take a part; to devote attention and effort; to employ one's self; to
enlist; to carry on; to conduct."

Among the definitions of the word given by the Century Dictionary
are the following.

"To occupy one's self; be busied; take part."

And the word "busy" is defined, among other ways, as follows:

"Actively or attentively engaged; closely occupied, physically or mentally;
opposed to idle; in constant or energetic action; filled with active duties or
employment."

So from these definitions a doubt or ambiguity arises as to the
meaning with which the word was used in the by-law, and plaintiff's
contention at once assumes a phase of plausibility.

But there is a further reason which influences me in the construction
of this by-law. The word "engaged" is used several times therein and
in one sentence thereof. It will not be questioned that it should re-
ceive the same interpretation wherever in that sentence it occurs. In
the first part of the sentence it is used in connection with dangerous
and perilous occupations, or such as are characterized in the by-law
itself as being "extrahazardous." It was plainly the design of the
by-law to guard the defendant against the risk of hazardous or dan-
gerous vocations, and there is certainly no reason why the prohibition
should apply to one who was merely a financial backer or pecuniarly
interested in one of those dangerous employments, without taking an
active or physical part therein. What the defendant evidently in-
tended was to prohibit its members from taking risks or hazards which
might tend to increase its liability. It is quite true that there is a
moral question involved in the liquor business; but we cannot consist-
ently change the meaning of the word "engaged," used as it is in-
discriminately in the by-law in reference to all the prohibited occupa-
tions, unless required to do so by the context. They are all grouped
together and characterized in the by-law by the word "occupations,"
which word may itself imply activity, as distinguished from mere pas-
siveness. The plain purpose of the defendant as expressed in the by-

law was not to protect its members against moral risks of engaging in unworthy or questionable vocations, but to protect itself against the pecuniary risk of having its members engage in occupations danger-ous to their health or lives, and evidently the liquor business was deem-ed to be fraught with a dangerous tendency or possibility to the health of those who might actively engage therein.

In my opinion the word "engaged," as used in this by-law, is sus-ceptible of two interpretations, and, if that is so, the rule applies that it should receive the interpretation most favorable to the plaintiff, because the defendant is responsible for the language used. Janneck v. Metropolitan Life Insurance Company, 162 N. Y. 574, 57 N. E. 182; Kratzenstein v. Western Assurance Company, 116 N. Y. 59, 22 N. E. 221, 5 L. R. A. 799; Allen v. St. Louis Insurance Company, 85 N. Y. 473; Herrman v. Merchants' Insurance Company, 81 N. Y. 184, 37 Am. Rep. 488.

It would have been very easy for the defendant, if it had intended the meaning for which it is now struggling, to have substituted the word "interested" for the word "engaged." The distinction between the two words is apparent, and is pointed out in People v. Gregg, 59 Hun, 107, 13 N. Y. Supp. 114, where it was held that an indictment was defective which charged that the defendant did ·"engage" in the manufacture and sale of spirituous liquors, in violation of a statute which prohibited him from being "interested" in such manufacture or sale; the court saying:

"The allegation of the indictment might be strictly true, and yet the de-fendant might in no way be interested in the manufacture or sale, within the language of the statute. He might be a common laborer in a brewery or dis-tillery, or an engineer running a distillery, and thus engaged in the manu-facture of distilled or fermented liquors, and yet in no way interested in its manufacture; and the same might be said of an agent employed by the month to sell, or a teamster employed under a salary for its delivery, and yet having no interest in the business."

The judgment and order should be affirmed, with costs. All concur, except SMITH, P. J., who dissents.