259 So.2d 876

Mrs. Patricia Lee SHERWOOD, Widow of Edmond P. SNELL, Plaintiff-Appellant-Relator,

v.

Mrs. Mercedes STEIN, a/k/a Mrs. Mercedes Stein Miorana, et al., Defendants (Firemen's Fund Insurance Company, Defendant-Appellee-Respondent).

No. 51313.

March 27, 1972.

Wilmer Glauner Hinrichs, New Orleans, for plaintiff-appellant-applicant.

Dillon & Williams, Gerard M. Dillon, New Orleans, for defendant-appellee-respondent.

TATE, Justice.

The plaintiff widow sues for the wrongful death of her husband. The present proceeding reviews the dismissal by summary judgment of her suit against one of the defendants, Firemen's Fund Insurance Company. The trial and intermediate courts held that the liability policy issued by Firemen's to an alleged joint tortfeasor did not provide coverage for the accident in question. 244 So.2d 647 (La.App. 4th Cir. 1971). We granted certiorari. 258 La. 566, 247 So.2d 391 (1971).

The issue of coverage by Firemen's is the sole question before us. The previous courts held that Firemen's comprehensive general liability policy did not apply to the present accident because of an exclusionary endorsement and because of certain instruments attached to the policy.

The plaintiff's husband was killed in a two-car intersectional collision in Jefferson Parish. Included among the defendants are the Parish of Jefferson, its traffic engineer,[1] and the liability insurer of the

---

1. Preemptory exceptions claiming governmental immunity were sustained dismissing from the suit the Parish of Jefferson and its traffic engineer. Snell v. Stein, 201 So.2d 876, (La.App. 4th Cir. 1967), certiorari denied, 251 La. 35, 202 So.2d

Parish and its employees. The basic claim of negligence against the Parish, its employee, and their insurer (Firemen's) is that the Parish grossly deviated from acceptable standards in the way it installed and maintained the traffic control system at the intersection where the fatal accident occurred.

Firemen's had issued a comprehensive general liability policy insuring all departments of Jefferson Parish government and their employees.[2] The pertinent· insuring agreement here involved is Coverage A, by which the insurer agreed: "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident."

■ If the insured (the Parish and its employees) is liable for the negligent installation or maintenance of the traffic control system,[3] then by such insuring agreement the insurer clearly provides coverage for any liability, such as that alleged, on the part of the Parish and its employees.

The insurer successfully contended below, however, that coverage of the accident in question was not afforded by this policy, despite its broad wordings. In so contending, the insurer relies upon (I) a "Streets and Sidewalks" exclusion endorsement and (II) argument that negligent operations by the traffic engineering and road departments were not intended to be within the coverage of the policy.[4]

The principles applicable to construction of insurance policies are not disputed. In case of ambiguity, the policy provisions are construed most favorably to the insured and against the insurer. Of the permissible constructions, the courts adopt that which effectuates the insurance over that which defeats it. Creole Explorations, Inc. v.

652 (1967). See also Snell v. Beneficial Fire and Casualty Company, 201 So.2d 880 (La.App. 4th Cir. 1967), certiorari denied 251 La. 36, 202 So.2d 653 (1967).

2. By Item 1 of the "Declarations" the named insured is: "Jefferson Parish— All Departments under the Direction of the Parish President & Jefferson Parish Council." These include the Parish Engineer and the parish department of Roads and Bridges, whose negligence it is alleged caused or contributed to the decedent's death.

3. The motion for summary judgment solely questions coverage of the policy. In this

direct action against the liability insurer, any immunity of the governmental unit or its employee for negligent acts is not available as a defense against suit, Rome v. London & Lancashire Indemnity Co., 169 So. 132 (La.App.Orl.1936), and the merit-issue of the insured's liability is not raised and is not before us in this decision of the· coverage-issue.

4. As will be more fully set forth below, this latter argument is essentially based upon isolated phrases found in the description of and rates for certain risks set forth within the 18-page "Declarations" and appended extension schedules attached to the policy. Tr. 172–191.

Underwriters at Lloyd's, London, 245 La. 927, 161 So.2d 768 (1964); Schonberg v. New York Life Ins. Co., 235 La. 461, 104 So.2d 171 (1958); Stanley v. Cryer Drilling Co., 213 La. 980, 36 So.2d 9 (1948).

On the other hand, in the absence of conflict with statute or public policy, insurers have the same right as individuals to limit their liability and to impose whatever conditions they please upon their obligations. In such event, unambiguous provisions limiting liability must be given effect. Monteleone v. American Employers' Insurance Company, 239 La. 773, 120 So.2d 70 (1960); Hemel v. State Farm Mutual Auto. Ins. Co., 211 La. 95, 29 So.2d 483 (1947); Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72, 125 A.L.R. 1075 (1939).

I. *The Streets and Sidewalks Exclusion Clause.*

The exclusionary endorsement relied upon provides, Tr. 156:

"STREETS AND SIDEWALKS

"Such insurance as is afforded under Division I of the Definitions of Hazard does not apply to the *existence* of streets and sidewalks of the named insured, and the *definition of premises* does not in-

clude such streets and sidewalks." (Italics ours.)

As the dissenting opinion of the court of appeal notes, 244 So.2d 651, this exclusion clause is ambiguous in the context of the policy as a whole. The policy itself contains no "definitions of Hazard" and no "definition of premises".[5] Further, even if we attempt to stretch these terms to fit what the insurer asks us to assume are the present policy's equivalents, nevertheless we are unable to ascribe to this clause any clear intent to exclude from coverage the negligent installation or maintenance of a traffic control system at an intersection.

The negligence alleged consists of the installation and maintenance of three traffic control lights at an intersection, two of them overhead on wires up above the street and one on a utility pole to the left of the intersection. Construing the exclusionary clause strictly, as we must, Salomon v. Equitable Life Assur. Society, 202 La. 1001, 13 So.2d 329 (1943), we cannot conclude it applies here:

The liability sought to be enforced does not arise from the "existence of *streets*" or from a *street* premise-defect. It is not the

5. Some of the difficulty in interpreting the present policy results from the use of an "M&C" (Manufacturers and Contractors Liability Policy) "Declarations" form as an appendix to this "Comprehensive General Liability Policy". The two types of policies have different purposes and afford coverage by different approaches. See text at footnote 9 below.

negligent maintenance or installation of *streets* or *sidewalks* (alone excluded from coverage by the clause), it is the negligent control of traffic upon such streets that is here complained of.

Aside from other reasons why they may be inapplicable, we distinguish the two decisions relied upon by the court as holding to the contrary:

Foreman v. Maryland Casualty Company, 224 So.2d 553 (La.App. 3d Cir. 1969) was based upon a broader exclusion clause [6] than the present one, in holding noncoverage for an accident caused by lack of a stop-sign and a failure to cut grass at an intersection; Labruzza v. Boston Insurance Co., 198 So.2d 436 (La.App. 4th Cir. 1967) applies the present clause so as to exclude liability for an accident resulting from what the court held to be part of a "sidewalk", a broken metal drain-cover within the grass walkway between the cement portion of the sidewalk and the street-curbing.

II. *The contention that negligent completed work of parish road department or parish engineer is not within coverage of policy.*

The other contention of the insurer is that the policy affords no coverage for the negligent installation and maintenance of traffic control signals by the parish Department of Roads and Bridges or the parish Department of Engineering. This seems to be founded upon the description of and the premium-ratings for the hazards created by the operations of these departments. They are described only under "Premises-Operations-Auditable Payrolls" in the 18-pages of extension (six) schedules attached to the "Declarations M & C . . . Description of Hazards" appended to the policy. Tr. 172–91.

This argument lacks merit: The "Description of Hazards" set forth by the "Declarations" and the 18-pages of extension schedules was expressly not intended to limit the coverage of the policy. See Tr. 172, to be quoted below. Its purpose was solely to show the ratings for the calculation of the total premium; both the advance premium at the inception of the policy and the final premium (after audit) at the policy's termination.[7]

The highly technical argument of the insurer in this regard must be understood

---

6. See 224 So.2d 554:
   "In consideration of the premium at which said policy is written, it is hereby understood and agreed that the policy shall not apply:
   "(2) To the existence *or use of* or the existence *of any condition* in any street, sidewalk, road, or bridge or *other public way* * * *." (Italics ours.)

7. See Condition 1 of Policy, Tr. 154 (p. 3):
   "CONDITIONS
   "1. *Premium*: The premium bases and rates for the hazards described in the declarations are stated therein. Premium bases and rates for hazards not so described are those applicable in accordance with the manuals in use by the company.

in the light of the complex and lengthy insuring instrument issued by it. The entire instrument is found in the 49 pages of the transcript at Tr. 154–202.[8] Its first four printed pages (with typed completion of blanks) set forth the named insured, the coverages, the limits of liability, the insuring agreements, the exclusions, and the conditions of the policy. To this are added forty-plus pages of attachments, being various endorsements and a description of hazards with extension schedules attached thereto.

The policy itself is a "Comprehensive General Liability Policy." The policy provides coverage generally for all risks of the insured except where coverage is excluded; it is unlike other liability policies, such as the "Manufacturer's and Contractor's Liability Policy", which insure only risks arising out of hazards thereafter defined.[9]

Under the insuring agreement of the policy, as earlier noted, the insurer is liable for injury caused by the negligence of Jefferson Parish governmental units under the direction of the parish president and council. See Footnote 2. These include the Department of Roads and Bridges and the Department of Traffic Engineering.[10] The risks insured against do not exclude, under the terms of the policy, the negligent installation and maintenance of traffic control systems by these governmental units or any other under the direction and control of the parish president and council.

■ Aside from its argument (which we have rejected) that the "Streets and Sidewalks" exclusion exempts this risk,

---

"The advance premium stated in the declarations is an estimated premium only. Upon termination of this policy, the earned premium shall be computed in accordance with the company's rules, rates, rating plans, premiums and minimum premiums applicable to this insurance. * * *

"The named insured shall maintain for each hazard records of the information necessary for premium computation on the basis stated in the declarations, and shall send copies of such records to the company at the end of the policy period and at such times during the policy period as the company may direct."

8. This is the original of the policy, as introduced from the files of the insured. We find other copies of the policy in the record, but for sake of consistency refer by transcript reference to this copy only. No contention is made that they differ in any material aspect from that introduced from the insured's files.

9. Arnold, Products Liability Insurance, 25 Insurance Counsel Journal 42, 43 (1958). See also Fredericks, Coverages Afforded by a Comprehensive General Liability Policy, 29 Insurance Counsel Journal 396 (1962).

10. Under the declarations, the policy did not afford protection to governmental units *not* under the parish president and council. The insurance was specifically not applicable to such other governmental units, such as the parish sheriff's clerk's and assessor's offices. See exclusion at Tr. 165. Further endorsements reinforced this exclusion by providing that, in the absence of specific endorsement, coverage was provided only for departments listed in the schedules attached to the policy. See Tr. 164, 167. Both the Road and Traffic Engineering Departments were in-

the insurer does not seem to rely upon any exclusion clause or condition of the policy in contending no coverage is afforded by the policy. It does refer to two endorsements related to "completed operations"[11], apparently in answer to arguments by the plaintiff. However, the negligent installation and operation of the traffic control system cannot be considered a "completed operation" as defined by the policy[12], and we do not understand the insurer to so contend.

The substance of the insurer's contention that the negligent acts alleged of the road and traffic engineering departments are not within the coverage seems to be based upon a strained construction of the "Description of Hazards" in the "Declarations M & C" annexed to the policy, including its 18-pages of extension schedules with numerous minute entries and premium-rating figures. The portion of the gross premium attributable to the "premises-operations-auditable payrolls" of these departments is included at Tr. 177[13] and Tr. 181[14]. (We pretermit that the description of the coverage for traffic engineering does not unambiguously exclude designing (shop operations) or erecting traffic

cluded on such schedules and are not excluded from coverage.

11. 1. The endorsement at Tr. 167 limits "Products-Completed Operations" coverage only to those parish units "as indicated in the extensive schedules". (Italics ours.) Schedule # 1 (singular) "Products-Complete Operations", Tr. 174 does list only restaurants, waterworks districts, a general hospital, and a gas distribution system—units which might cause injury through products or works off the premises (see footnote 12). Nevertheless, this is only one of the 9 schedules (plural); the roads and bridges department is on schedule # 2, Tr. 177, and the traffic engineering department is listed on schedule # 6, Tr. 181; and since they are indicated in the "extension schedules" (plural) as required by the endorsement, they are not (at least arguably) unambiguously excluded from coverage by it. However, since we are not concerned with "completed operations" coverage, we need not decide this issue.

2. The interpretative endorsement at Tr. 161 does not restrict coverage. It defines "operations" so as to include "any act or omission in connection with operations performed by or on behalf of the named insured or elsewhere, whether or not goods or products are involved in such operations."

12. In the Condition 3(c) of the policy (Tr. 154, p. 3), "products hazard" is defined as "(1) goods or products, manufactured, sold, handled or distributed by the named insured . . ., if the accident occurs after possession of such goods or products has been relinquished to others . . . and if such accident occurs away from premises owned, rented or controlled by the named insured . . .; (2) operations, if the accident occurs after such operations have been completed or abandoned and *occurs away from premises owned, rented or controlled by the named insured * * *.*" (Italics ours.)

13. Item 7 of Schedule # 2 of the attached extension schedules: "Roads & Bridges "Streets or road paving or repaving, surfacing or resurfacing or scraping."

14. Item 28 of Schedule # 6: "Traffic Engineering—Sign erection or repair,

control systems (signs) by the traffic engineering department.)

■ The basic contention is without merit, since such description of hazards for premium-rating purposes was expressly not intended to change liability under the policy as provided by its insuring agreements and exclusions. The policy expressly provides (immediately after the heading "Description of Hazards" and in introduction to this description and the 18-pages of extension schedules"), Tr. 172: *"The rating classifications under the Description of Hazards do not modify the exclusions or other terms of this policy."* (Italics ours.)

The broad insuring agreements of the policy were thus not intended to be limited by the minutiae of the premium-rating data included within the lengthy and detailed extension schedules.

■ Further, although the policy at several places indicates that it and the premiums assessed were issued in reliance upon the statements in the declarations[15], nowhere in the policy is it provided that the coverage is limited to the hazards as

Not outdoor advertising companies—including shop operations."

15. See preamble to insuring agreements, Tr. 154 (p.a) and Conditions 18 ("Declarations"). Item 5 of the Declarations states: "The schedules disclose all hazards insured hereunder known to exist at the effective date of this policy, unless

so described[16]. Whatever might be the rights as between the insurer and the insured for an increase in premium or for some action on the basis of error or willful misrepresentation in the description of hazards, they are immaterial in this statute—authorized direct action by an injured third person against an insurer based upon a liability of its insured, which is "within the terms and limits of the policy", La.R.S. 22:655, at the time the loss occurred. Futch v. Fidelity & Casualty Company, 246 La. 688, 166 So.2d 274 (1964); West v. Monroe Bakery, Inc., 217 La. 189, 46 So.2d 122 (1950).

*Decree*

Accordingly, for the reasons assigned, the summary judgment dismissing the plaintiff's suit is reversed, and the case is remanded to the district court for further proceedings not inconsistent herewith. All costs of these proceedings in the appellate courts are taxed against the Firemen's Fund Insurance Company, defendant-appellee; all other costs to be determined upon final disposition of this cause.

Reversed and remanded.

otherwise stated . . . Absence of an entry means 'No exceptions.'"

16. The apparent policy purpose of the description of hazards was to show the basis for the calculation of the total premium due, both that advance-estimated portion of it paid at the inception, and that found to be finally due at the termination of the policy. See footnote 7.