348 So.2d 186 (1977)
Julian Donald GREGORIE, Plaintiff-Appellee,
v.
The HARTFORD ACCIDENT AND INDEMNITY COMPANY et al., Defendants-Appellants.
No. 6043.
Court of Appeal of Louisiana, Third Circuit.
June 30, 1977.
Rehearings Denied August 1, 1977.
Writs Refused October 26, 1977.
*187 John A. Jeansonne, Lafayette, for defendant-appellant.
Daniel J. McGee and J. Jake Fontenot, Mamou, for plaintiff-appellee.
Richard R. Kennedy, Lafayette, for defendants-appellants.
Voorhies & Labbe by Richard D. Chappuis, Jr., Lafayette, as one of counsel for defendants-appellants.
Before DOMENGEAUX, GUIDRY, and ROGERS, JJ.
DOMENGEAUX, Judge.
This is a tort action brought by Julian Donald Gregorie against Jerry Wayne Townsley, Cactus Pipe and Supply Company, Inc., and the Hartford Accident and Indemnity Company as the liability insurer of both Townsley and Cactus. Plaintiff Gregorie sued defendants[1] for injuries sustained in a one-vehicle accident which occurred August 16, 1974. The vehicle was owned by Cactus Pipe and Supply Company and was driven by defendant Townsley. Both Townsley and Gregorie were employees of Cactus Pipe and Supply Company. The case was tried before a judge who found that the sole proximate cause of the accident was the negligence of Townsley. He awarded plaintiff the sum of $317,256.23 and held Townsley and Hartford solidarily liable. Hartford's liability policy had limits of $1,000,000.00. We affirm the holding of the district judge.
The work of Cactus Pipe and Supply Company consisted partially of pulling casing from depleted oil and gas wells which had been abandoned. A drilling rig was used in this work. Such rigs were manned by a crew of four: an operator, a "top hand", and two "floor hands". On August 16, 1974, the plaintiff was the operator of one such Cactus rig; that is, the person in charge of the operation. Jerry W. Townsley was his "top hand"Thomas J. Mooney and Jerry M. James were "floor hands" on the same rig.
Gregorie's crew was sent by Cactus to a Texaco field near Sorrento, Louisiana, where they began to pull casings on abandoned wells. Gregorie and his crew resided in Eunice, Louisiana. In the late afternoon after completing their work for the day, the members of the crew were driving with Gregorie as driver, in a van type panel truck owned by Cactus Pipe and Supply Company, Inc., from Sorrento to Eunice. They stopped at a grocery store on the way to pick up some food and drinks. Upon returning to the vehicle, Townsley took the wheel so that plaintiff could complete the day's checks. Townsley had no alcoholic beverage. During a rainstorm, the vehicle left the road, overturning and causing serious injury to Mr. Gregorie.
Defendants cite as error the following:
1. The finding that the negligence of Jerry Wayne Townsley was the sole cause of the injuries sustained by the plaintiff.
2. The failure to find that the accident proximately resulted from Gregorie's contributory negligence.
3. The failure to find to be effective an exclusionary clause contained in the policy of insurance issued by Hartford which excluded from coverage drivers engaged in *188 the business of their employer when a fellow employee is injured.
4. The failure to find that an exclusionary clause in the Hartford policy denied coverage to Townsley on the basis that Cactus Pipe and Supply Company was liable under the workmen's compensation laws to plaintiff.
5. The alternative finding that the plaintiff would be entitled to uninsured motorist benefits under the terms of the Hartford policy in the facts of this case, in the event that judgment would not have been granted under the liability portion of the Hartford policy.
6. The finding that, should uninsured motorist coverage become an issue, the claimant would be entitled to "stack" 490 vehicles at $5,000.00 per vehicle in determining the uninsured motorist coverages afforded by Hartford to Gregorie.
7. The award in damages of $317,356.23 to the claimant.
Defendant Townsley did not appear to testify at trial. His only testimony in the record consists of an unsworn, unsigned statement given by him to counsel for plaintiff. This statement was entered into the record over objection from plaintiff's counsel. Townsley stated that at the time of the accident he had encountered some inclement weather intermittently along the way when, suddenly, it began to pour down rain. There was water standing on the highway. He surmised that he hit a low spot on the highway that was filled with water, and this caused him to lose control of the vehicle.
The other three members of the crew were riding in the van with Townsley: Plaintiff Gregorie, Jerry M. James, and Thomas J. Mooney. Jerry M. James did not testify at trial. Mooney testified that he was lying back on the seat in the van when Townsley lost control of the vehicle. Mooney did not actually see what happened, but said he felt the truck seemed to hydroplane and Mooney said that is when the accident occurred. Plaintiff Gregorie testified at trial concerning Townsley's driving ability and his alleged negligence but plaintiff's subsequent injuries have resulted in brain damage and general amnesia. About the accident, Gregorie said he did not recall Townsley doing anything negligent or reckless, that it was raining, and that he was busy with paper work and not paying close attention when the accident happened.
The only other testimony concerning the negligence of Townsley was that of Louisiana State Trooper Mizzi who investigated the accident. He testified that there was indeed rainy weather and water standing on the road; nevertheless he issued a ticket to Townsley at the scene of the accident. The citation was for violation of La. R.S. 32:58. That statute reads:
"§ 58. Reasonable and proper control of vehicles
It shall be unlawful for the driver of any vehicle to negligently fail to maintain reasonable and proper control of said vehicle while operating the vehicle on the public roads of this state. Added by Acts 1972, No. 567, § 1."
Trooper Mizzi also stated that he had estimated the speed at which Townsley was driving the vehicle at the time of the accident, and that estimated speed was 55 miles per hour (the posted speed limit).
We cannot say that the finding of negligence on the part of Townsley was erroneous. Townsley admitted his negligence in a plea of guilty to a charge that he violated R.S. 32:58, supra. This guilty plea is admissable as an admission against interest. See Davis v. Bankston, 192 So.2d 614 (La. App. 3rd Cir. 1966). The Court therein stated:
"Ordinarily, evidence is not admissible in a civil tort action to prove either that a party was charged with, Bertoli v. Flabiano, La.App. 1 Cir., 116 So.2d 76, or convicted of, Reid-Elliott Motors v. Lee, La. App. 1 Cir., 94 So.2d 160, a criminal offense arising out of the same accident. To the contrary, however, the usual rule is that in the absence of a prohibitory statute, a plea of guilty in a criminal case is considered an admission against interest which is competent evidence in a civil *189 action involving the same subject matter. American Casualty Co. v. Lennox, La. App. 4 Cir., 169 So.2d 707; Smith v. Southern National Ins. Co., La.App. 4 Cir., 134 So.2d 337; 4 Wigmore on Evidence, Section 1066 (3d ed., 1940); 31 A C.J.S. Evidence § 300b; 20 Am.Jur., Evidence, Section 648.
The trial court thus erred in excluding evidence of this plea of guilty.
However, such an admission, while competent evidence, is not conclusive. Thus, in the Lennox case cited above the court in the civil proceedings accepted, as vitiating any admission of negligence, the party's explanation that he had pleaded guilty solely for the sake of convenience and expediency, since it was easier and less expensive to pay the relatively small fine than to contest the charge."
Contrary to the situation in Davis there is nothing in the testimony or the pleadings herein to vitiate the culpability of Jerry Townsley. Although this guilty plea is not conclusive evidence of negligence, it is nevertheless competent evidence of such negligence.[2] Although the record is bare of any direct evidence of Townsley's negligence the Trooper also stated that the vehicle was travelling at approximately 55 miles per hour, which is arguably too fast for the weather conditions which Townsley was encountering. Compare Wilson v. Pittman, 307 So.2d 804 (La.App. 1st Cir. 1975). We find that there was substantial factual evidence in the record, as noted above, upon which the trial judge could reasonably base his finding. Canter v. Koehring, 283 So.2d 716 (La.1973).
Looking at the record as a whole, we cannot say that the judge manifestly erred in his finding of negligence.[3]
Defendant further claims that the plaintiff is prevented from making any recovery because of his contributory negligence. A guest passenger's recovery for personal injury may be barred by both the doctrines of contributory negligence and assumption of risk. We find that plaintiff was not contributorily negligent. Townsley, the driver, was not known to be a careless driver, and Gregorie did not notice that he was going too fast or doing anything else wrong from the time the crew left the grocery store until the time of the accident, as noted before. Townsley was believed to be a good driver by his fellow workers. Prior to the accident there was nothing known to the other workers indicating any reason for concern, nor was there any known hazard to the safety of the occupants of the vehicle.
Defendant also claims that the negligence of Townsley is imputable to plaintiff because of a joint enterprise between plaintiff and Townsley. Defendant urges that plaintiff's right to have his wishes respected concerning the manner in which the vehicle was driven was equal to that of the driver, Townsley. Therefore, defendant argues that this created a joint venture between Gregorie and Townsley.
We find no evidence in the record tending to prove a joint venture in this instance. Plaintiff at the time of the accident was busy with the books and records of his employer, and was not directing Townsley in any manner whatsoever. Gregorie did not have any actual control over the actions of Townsley nor did he claim to have any. Therefore we find no contributory negligence or assumption of risk on the part of Gregorie.
*190 The trial judge held that Townsley was the omnibus insured of the defendant Hartford, and that no exclusionary clause applied to exclude Townsley from that coverage. The policy defined an `insured' as follows:
". . .
(c) Any other person while using an owned automobile or a hired automobile with the permission of the named insured . . .
(1) A lessee or borrower of the automobile, or
(2) An employee of the named insured. . ."
Also the policy excludes certain persons from the insured status:
"None of the following is an insured:
(i) Any person while engaged in the business of his employer with respect to bodily injury to any fellow employee of such person injured in the course of his employment . . ."
Defendant argues that the case of Manuel v. Liberty Mutual Insurance Company, 256 La. 480, 236 So.2d 807 (1970) is the controlling case in this instance. The Louisiana Supreme Court in Spain v. Travelers Insurance Company, 332 So.2d 827, 830 (1976) sets forth the rule in Manuel:
"In Manuel v. Liberty Mutual Insurance Company, 256 La. 480, 236 So.2d 807 (1970), we held that the test to be applied in determining whether an employee's injuries were sustained in the course and scope of his employment within the terms of an exclusionary clause similar to the one involved here is the same test which is applied in determining whether the employee was injured in the course of his employment so as to entitle him to workmen's compensation."
We hold that the Manuel case is not controlling in this instance. The language in the policy in the Manuel case was substantially different from the language in the instant policy. The policy in Manuel stated:
". . . The insurance with respect to any person or organization other than the named insured does not apply:

`* * *'
'(c) to any employee with respect to injury * * * of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of an automobile in the business of such employer.' (Italics ours)"
It can be easily seen that there are two different standards in the two policies. The Manuel policy tracks the workmen's compensation statute's language. The language in the instant policy is more restrictive language. To be "engaged in the business of his employer" connotes an active participation in the employer's work. Language in the case of B & H Passmore M & R Company v. New Amsterdam Casualty Co., 10 Cir., 147 F.2d 536 (1945) is quite pertinent here:
"Moreover, the exclusion clause `engaged in the business, * * * of the insured' differs materially from the clause `arising out of and in the course of his employment.' The word `engaged' connotes action."
Also, 14A Words and Phrases, p. 188 (West, St. Paul, Minn., 1952) give several definitions of the word "engaged":
"The word `engage' connotes more than a single act or a single transaction; it involves some continuity of action. Day v. Equitable Life Assur. Soc. of United States, C.C.A. Colo., 83 F.2d 147, 148.
The word `engage' means `to take a part; to devote attention and effort; to employ one's self; to enlist; to carry on; to conduct; be busied; to occupy one's self. Graves v. Knights of the Maccabees of the World, 112 N.Y.S. 948, 950, 128 App.Div. 660."
Therefore, we find that the Manuel case is not controlling in this instance because of the substantially different language.[4]
*191 The Supreme Court has consistently confirmed the rule of interpretation of an insurance policy as follows:
"Words used in an insurance contract are to be understood in the usual and common signification. C.C. 1946; Harmon v. Lumbermens Mutual Casualty Com., 247 La. 263, 170 So.2d 646 (1965); Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72 (1939). Ambiguous coverage provisions in a policy are construed most favorably to the insured and against the insurer. Schonberg v. New York Life Ins. Co., 235 La. 461, 104 So.2d 171 (1958); Albritton v. Fireman's Fund Ins. Co., 224 La. 522, 70 So.2d 111 (1954); Mutual Life Ins. Co. of New York v. New, 125 La. 41, 51 So. 61 (1910). And, `. . . if the doubt or obscurity arise for the want of necessary explanation which one of the parties ought to have given, or from any other negligence or fault of his, the construction most favorable to the other party shall be adopted, whether he be obligor or obligee.' C.C. 1958." Jennings v. Louisiana & Southern Life Insurance Company (La.1974), 290 So.2d 811, at 813/814.
Exclusionary clauses in insurance policies will be even more stringently interpreted. In Rushing v. American Home Insurance Company, 274 So.2d 458, at 460 (La.App. 3rd Cir. 1973) this court stated:
"Under LSA C.C. Art. 1957 and the well settled jurisprudence of this State, ambiguous causes in policies of insurance are to be construed against the insurer, who prepared the contract, and SUCH IS PARTICULARLY TRUE OF CLAUSES THAT EXCLUDE COVERAGE. Berry v. Aetna Casualty & Surety Company, La.App., 240 So.2d 243, writ refused, 256 La. 914, 240 So.2d 374, appeal dismissed, certiorari denied, 401 U.S. 1005, 91 S.Ct. 1255, 28 L.Ed.2d 541; Rankin v. New York Life Insurance Company, La.App., 240 So.2d 758, writ refused 257 La. 276, 242 So.2d 247; Simmons v. American National Insurance Company, La.App., 199 So.2d 421; Wilks v. Allstate Insurance Company et al, La.App., 195 So.2d 390."
When there is an ambiguity in a clause of an insurance contract the policy provisions are construed most favorably to the insured and against the insurer. Snell v. Stein, 261 La. 358, 259 So.2d 876 at 878 (1972). Therefore we will construe this exclusionary clause most favorably to the insured.
We must consider whether Jerry Townsley was actively "engaged in the business of his employer" according to the preceding rules of construction. We find that he was not. Townsley was proceeding home from his work when the accident occurred. He was not given any pay for the time after he had finished his job until he got home to Eunice. He was not doing anything in relation to the business of his employer while he was driving the vehicle. Although he was not prevented from driving, he was not required to do so in his employment. He was merely proceeding home. On the contrary, Gregorie was actively pursuing the business of his employer, as was required by his employer to provide the truck to the other employees as transportation home, but the standard for Gregorie is different. The standard in the policy is: Was Gregorie within the course of his employment when he was injured? Obviously, Gregorie was within the broad course of his employment when he was injured. But the exclusionary clause does not take effect unless Townsley can be found to be engaged within the business of his employer. Therefore the exclusionary clause does not take effect and Townsley is indeed the omnibus insured in this case.
The trial court in its reasons for judgment mentions that there were uninsured motorist benefits under the terms of the policy and that he thought that these benefits were applicable upon the facts of this case. However, the trial judge did not make an award based on the uninsured motorist coverage but upon the basic liability *192 portion of the policy. Appellant takes issue with the trial judge's statement. Because we have already decided coverage under the liability portion of the policy, it is not necessary that we reach the uninsured motorist benefits issue.[5]

QUANTUM
Counsel stipulated at the outset of the trial that there would be no prejudice attached to the failure to call as witnesses the many doctors involved in this case. Instead, the deposition, statements, and evaluations of the following doctors were introduced into evidence: Dr. Robert Rivet, a Lafayette, Louisiana, neurological surgeon who operated on Gregorie's brain; Dr. William Cloyd, a Lafayette, Louisiana, doctor with a neuropsychiatric clinic; Dr. Ronald S. Pryer, a Pineville, Louisiana, clinical psychologist; Dr. William Black, a neuropsychologist with Louisiana State University; and Dr. William A. Ward, a Mamou, Louisiana, dentist.
Their uncontradicted reports indicate that plaintiff lost his senses of taste and smell, suffers from double vision, and sustained a hearing impairment as a result of his severe brain injury. He also lost all of his teeth as a result of the accident, and one side of his face is paralyzed, which caused a serious speech impediment. He lost his right ear, which compounds his disfigurement.
The paralysis causes difficulty in eating and reduces the effectiveness of his dentures. Due to his memory loss, and other serious disabilities, rehabilitation is virtually impossible. In addition, he has an impaired sexual drive and is unable to engage in any sort of physical activity because of his frequent headaches, dizzy spells, blackouts, and equilibrium loss which prevent him from walking for even a short distance. The psychological and psychiatric evidence indicates that he is psychotic and deeply depressed because of the trauma and his condition. He has undoubtedly suffered and will continue to suffer greatly, and will continue to experience humiliation and frustration because of his condition and appearance.
The district court awarded plaintiff $317,256.23 for loss of wages, general damages, and medical expenses. Plaintiff was a relatively young man, being 38 years of age at the time of the accident, earning $9,500.00 per year for the several years preceding the accident. An actuarial evaluation was presented by Dr. John Chisolm, who offered several different figures as estimates of loss of future wages ranging between $90,000.00 to $180,000.00, depending on inflation and other factors.
In the recent landmark case of Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976), the Court stated that: "The record must clearly reveal that the trier of fact abused its discretion in making its award" before an appellate court can disturb the award. We find no such abuse of discretion here, taking into consideration the magnitude of the injuries and their resulting effect upon plaintiff.
For the above and foregoing reasons we affirm the judgment of the district court. Costs to be assessed against defendants-appellants, Townsley and Hartford.
AFFIRMED.
GUIDRY, J., concurs in the result and assigns written reasons.
GUIDRY, Judge, concurring.
I concur in the result.
In my opinion the exclusionary clause in the Hartford policy operates to exclude defendant, Jerry Wayne Townsley, as an omnibus insured under the Hartford policy.
*193 The vehicle involved in the accident giving rise to this litigation was furnished by the employer of plaintiff and defendant, Townsley, for the specific purpose of affording transportation for its employees to and from work. Townsley was operating this vehicle at the time of accident and while he and other employees, including Gregorie, were returning from work. Townsley was therefore actively engaged in the business of his employer. Gregorie, a guest passenger, was clearly in the course of his employment. The policy in question excludes the following from insured status:
"Any person while engaged in the business of his employer with respect to bodily injury to any fellow employee of such person injured in the course of his employment.. . ."
I do not necessarily agree that the phraseology "while engaged in the business of his employer" and "course of his employment" create different standards, however, even under the meaning attributed to such clauses by the majority I would find that the Hartford policy excludes Townsley from insured status.
In Written v. Travelers Indemnity Company, 304 So.2d 715 (La.App. 3rd Cir. 1974), a different panel of this court when presented a similar factual situation found the exact exclusionary clause effective to exclude insured status and stated:
"Travelers did not issue a liability policy to Solar, the driver of the vehicle involved in the accident. And, the policy which it issued to Garber Brothers specifically excluded coverage of `any person while engaged in the business of his employer with respect to bodily injury to any fellow employee of such person injured in the course of his employment.' Solar was engaged in the business of his employer, Garber Brothers, when this accident occurred, and all of the other occupants of the car were his fellow employees who were injured in the course of their employment. Solar thus was not an insured under the policy when the accident occurred. See Jagneaux v. American Automobile Insurance Company, 136 So.2d 91 (La.App. 3 Cir. 1961)."
I would decide this issue as did my brethren in Written, supra. Contrary to my esteemed brethren on this panel I find Written persuasive and convincing. See also Manuel v. Liberty Mutual Insurance Company, 256 La. 480, 236 So.2d 807 (1970).
I would reach the same result as the other members of the panel however, finding that plaintiff is entitled to recover under the uninsured motorist provisions of the Hartford policy. Plaintiff was an insured under the uninsured motorist coverage of the policy and he was injured through the negligence of Townsley who is an uninsured motorist. The exclusionary provisions of the Hartford policy, insofar as uninsured motorist coverage is concerned, are in derogation of the provisions of LSA-R.S. 22:1406(D)(1)(a) and (2)(b) and therefore invalid and inoperative. Guillot v. Travelers Indemnity Company, 338 So.2d 334 (La.App. 3rd Cir. 1976) writ dismissed La., 341 So.2d 408. The uninsured motorist coverage under this policy, which insured some 300 plus vehicles, when "stacked" would be sufficient to cover the quantum of damages found to be due by the trial court.
For the above and foregoing reasons I concur in the result reached by the majority.
NOTES
[1] The suit against Charlie Snow, Gregorie's supervisor, was dismissed without prejudice.
[2] Plaintiff argues in favor of a presumption of negligence which should follow from the mere fact that the vehicle left the road, citing King v. King, 210 So.2d 917 (La.App. 1st Cir. 1968). We disagree, in light of the Supreme Court decision in that same case, 253 La. 270, 217 So.2d 395 (1968). Also, the presumption in the Court of Appeal decision was in conjunction with res ipsa loquitur, which does not apply in this case.
[3] Plaintiff charges as spurious defendant's argument that the finding of negligence on the part of Townsley was erroneous. Plaintiff notes that defendant failed to depose Townsley during the entire two year period following the accident and preceding trial, at which time Townsley was still in the employ of Cactus. Townsley has since moved out-of-state and cannot be located.
[4] Defendant also cites Written v. Travelers Indemnity Company, 304 So.2d 715 (La.App. 3rd Cir. 1975) which case had facts very similar to the instant case. The Court found there that the driver was `engaged in the business of his employer', but it is not clear what circumstances lead the Court to so hold. Therefore, we do not find Written persuasive under the facts of this case.
[5] Intervenor, Hartford Accident and Indemnity Company, received a credit of $24,846.00 for reimbursement of previously paid medical and workmen's compensation benefits to plaintiff Gregorie. (Coincidentally, Hartford was also the workmen's compensation insurer of Cactus Pipe and Supply Company, Inc.). It filed a brief contesting the plaintiff's right to demand uninsured motorist benefits in the alternative to receiving liability benefits. Because as aforesaid, we do not reach this issue, intervenor's argument need not be discussed further.