566 So.2d 434 (1990)
John B. WALDRIP
v.
CONNECTICUT NATIONAL LIFE INSURANCE COMPANY, Delta Health Network, Inc., Delta Care Group Trust, Trustees of Delta Care Group Trust.
No. 90-CA-135.
Court of Appeal of Louisiana, Fifth Circuit.
July 30, 1990.
Rehearing Denied September 25, 1990.
*435 Clement P. Donelon, Metairie, and John B. Waldrip, Littler, Mendelson, Fastiff & Tichy, New Orleans, for plaintiff/appellee.
Charles K. Reasonover, Duris L. Holmes, Deutsch, Kerrigan & Stiles, New Orleans, for defendants/appellants.
Before BOWES, DUFRESNE and WICKER, JJ.
WICKER, Judge.
Connecticut National Life Insurance Company (CNL); Delta Health Network, Inc.; and Delta Care Group Trust appeal a summary judgment rendered against them and in favor of the plaintiff, John B. Waldrip. The issue is applicability of a coverage exclusion in a health care policy. We affirm in part, reverse in part, and remand.
Waldrip, through his law firm, had group health coverage connected to three entities: CNL, Delta Health, and Delta Care. CNL and Delta Health agreed on July 1, 1986, that Delta Health would perform certain functions for CNL with regard to medical insurance policies: underwriting, claims, premium collection, and administration. Delta Health in turn created the Delta Care Trust on August 29, 1986, for the purpose of providing a group insurance plan and fund. CNL issued a group health insurance policy to Delta Care on August 31, 1986. Waldrip's law firm then contracted with Delta Care, as a preferred provider organization, in January of 1987.
Waldrip developed terminal liver dysfunction caused by chronic hepatitis. He was admitted to East Jefferson General Hospital on February 23, 1988, where he was treated conservatively but unsuccessfully. His treating physician, Robert E. Songy, M.D., in conjunction with a specialist in liver transplantation, Daniel H. Hayes, M.D., recommended a liver transplant as the only way to save Waldrip's life. Dr. Hayes admitted him to Ochsner Foundation Hospital, which is an accepted transplant center, on March 3, 1988, for surgery. Both doctors believed Waldrip, who was in otherwise good health and relatively young, had only a few weeks to live.
Waldrip and Ochsner attempted to confirm insurance coverage for his surgery with Delta Health. CNL advised Delta Health that liver transplantation was considered experimental and not covered by the policy on March 9, 1988, one day after Waldrip's surgery. According to correspondence between Waldrip and Delta Health, Waldrip was not advised of this non-coverage until months later. Waldrip's surgery has apparently been successful and, with proper monitoring and drug therapy, he is projected to have a nearly-normal life span.
On June 29, 1988, Delta Health cancelled the law firm's policy effective September 1, 1988, but agreed to "pay all valid claims incurred" prior to the cancellation date. Letters from Waldrip requested reasons for the cancellation and payment of claims for his Ochsner hospitalization and surgery, approximately $160,000.00. He also requested payment of all liver-related claims which were expected to continue past the cancellation date.
Waldrip filed suit against CNL, Delta Health, and Delta Care as well as the Trustees of Delta Care Group Trust. These latter were never served so are parties neither to the trial action nor this appeal. At issue is the provision in CNL's policy which defines "experimental" to mean
care, treatment, services or supplies not approved or accepted as essential to the treatment of injury or sickness by any of the following:
(1) the American Medical Association;
(2) the United States Surgeon General;
(3) the United States Department of Public Health; or
(4) the National Institutes of Health....
Waldrip filed a motion in limine to exclude consideration of this experimental treatment exclusion as a defense. The judge granted the motion, ruling that this provision was in violation of the "Entire Contract Statute" [La.R.S. 22:628]. At the same time, he denied the motions for summary judgment of all parties. Shortly thereafter, Waldrip filed another motion for summary judgment, alleging that because *436 CNL had been foreclosed from raising the experimental treatment exclusion as a defense, he was entitled to judgment based upon the policy provisions as a matter of law.
The judge agreed and awarded him $160,613.65 in benefits; and CNL, Delta Care, and Delta Health have appealed this judgment. In a later judgment he also awarded the same amount in penalties as well as amounts for other medical benefits which had been unpaid because of CNL's cancellation of Waldrip's policy, he ordered CNL to continue coverage for Waldrip's illness, and he deferred a decision on an award of attorney's fees in favor of Waldrip pending an evidentiary hearing on the matter. This latter judgment has also been appealed but has not been consolidated with the matter under consideration in this appeal.
CNL, Delta Care, and Delta Health assign errors: the judge erred in precluding them from presenting evidence regarding the experimental treatment exclusion, he erred in granting summary judgment against them based on his erroneous exclusion of the experimental treatment evidence, and he erred in granting summary judgment against Delta Care and Delta Health because they were not Waldrip's insurer and were acting as limited agents for a disclosed principal.
Since the judgment in question was a summary one, it must be evaluated in light of the requirements of La.C.C.P. arts. 966 and 967.
The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.
. . . .
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.

LIABILITY OF CNL
CNL did not appeal the judgment in limine which excluded from consideration any evidence on the experimental nature of liver transplants. However, it is that ruling and its effect that enabled Waldrip to obtain his summary judgment; so we believe it is necessary to consider the propriety of that judgment.
La.R.S. 22:628, the legal basis for the decision, reads
No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless it is in writing and physically made a part of the policy or other written evidence of insurance, or it is incorporated in the policy or other written evidence of insurance by specific reference to another policy or written evidence of insurance....
CNL, Delta Health, and Delta Care argue that this statute does not apply to the experimental treatment exclusion because it was explicitly stated in the policy and was not an application, by-law, statement, agreement or other instrument sought to be incorporated into the policy and the exclusion merely incorporated definitional terms which are permitted by the statute. Waldrip argues that the exclusionary language referred to extrinsic determinations which made it impossible for anyone, including CNL, to determine whether or not liver transplants were covered under the policy.
We believe that La.R.S. 22:624 is also relevant to this decision:
A. The written instrument, in which a contract of insurance is set forth, is the policy.
B. A policy shall specify:
. . . .
(3) The risks insured against.
. . . .

*437 (6) The conditions pertaining to the insurance.
The purpose of the whole contract statute is to ensure that the insured has in his possession the entire contract between him and his insurer. Spain v. Travelers Insurance Company, 332 So.2d 827 (La.1976); Jones v. Breaux, 289 So.2d 110 (La.1974); LeBoyd v. Louisiana Transit Co., 375 So.2d 749 (La.App. 4th Cir.1979). The Court in Spain concluded
Thus it seems clear that the legislative policy, as expressed in La.R.S. 22:628, and by similar statutes in other jurisdictions, prohibits the insurer from urging as a defense the breach of any condition which is not in some manner physically made a part of the policy. The object of the statute is to assure full notification to the insured of all relevant provisions of his insurance contract. Furthermore, the legislature has determined this object can be attained only by mandating the actual attachment of such modifying provisions to the insurance policy.
At 833.
We agree with the judge that the exclusion in CNL's policy is governed by La.R.S. 22:628. It is this very thing, the inability of the insured as well as the insurer to know from reading the policy what is and is not covered, that La.R.S. 22:628 is designed to avoid. We believe that evidence pertaining to the exclusion was properly excluded. The cases involving incorporation of the definition of an "executive officer" by reference to the by-laws and charters are distinguishable, as the documents by which coverage is determined are in the possession of the insured. See, for example, Wannage v. Employer's Ins. of Wausau, 386 So.2d 1076 (La.App. 3rd Cir.1980), writ den. 393 So.2d 739 (La. 1980). Also distinguishable is Whittington v. Sowela Technical Institute, 438 So.2d 236 (La.App. 3rd Cir.1983), writ den. 443 So.2d 591 (La.1983). That case involved incorporation of another policy by reference, a situation which is permitted under the express terms of La.R.S. 22:628.
We also find the provision in question so ambiguous that even CNL was unable to determine quickly whether or not liver transplants constituted "experimental" treatment. Exclusions from coverage must be clear and unmistakable, and any ambiguity must be construed against the insurer and in favor of coverage. Snell v. Stein, 261 La. 358, 259 So.2d 876 (La.1972); Marsh v. Reserve Life Ins. Co., 516 So.2d 1311 (La.App. 2d Cir.1987).
We affirm that portion of the summary judgment which finds CNL liable to Waldrip for the expenses incurred in his liver transplant.

LIABILITY OF DELTA HEALTH AND DELTA CARE
Delta Health and Delta Care both argue that they cannot be liable to Waldrip because neither is an insurer. The Insurance Code defines "insurer" as "every person engaged in the business of making contracts of insurance, other than a fraternal benefit society...." La.R.S. 22:5(2). The Code of Civil Procedure definition of "insurer" is similar and refers to La.R.S. 22:5. We must therefore decide, by reviewing the contracts among the various parties which are the only evidence before us on the summary judgment, whether either Delta Health or Delta Care was engaged in the business of making contracts of insurance.
Delta Health and CNL contracted with each other on July 1, 1986. They stipulated that the contract would be governed by Connecticut law. Delta Health undertook the functions of underwriting, administration of claims, collection of premiums, and general administration. Delta Health agreed to be a fiduciary and hold CNL harmless from liability for "... negligent or non-negligent action, failure to act, or other misconduct by Administrator [Delta Health] in the performance of his [its] functions;..." The contract granted to Delta Health the status of limited agent; and, with respect to any functions not set out in the agreement, denominated Delta Health as a general contractor.
Delta Health contracted with Hibernia Bank and John Billingsley, as trustees, on August 29, 1986. [John Billingsley was also president and representative of Delta Health in its contract with CNL.] This *438 agreement created the Delta Care Trust for the purpose of providing a group insurance plan and an insurance fund. It gave the trustee the authority to pay premiums to CNL; alter, modify, or cancel policy provisions; and purchase other policies from CNL at the direction of Delta Health. Both CNL and Delta Health agreed to hold the trustees harmless.
CNL issued the insurance policy in question to Delta Care as policyholder on August 31, 1986, stipulating that the policy would be governed by Louisiana law.
Finally, Delta Care contracted with Waldrip's law firm effective February 1, 1987. That contract referred to Delta Care as "Delta Care a Preferred Provider Group Insurance Trust", "Administered by Delta Health Network, Inc.; Insured by Connecticut National Life Insurance Company." The form of the contract was an employer application and trust adoption agreement by which the law firm applied for membership in the trust to enable the trustee to secure group insurance coverage. All such applications had to be reviewed by Delta Health and approved by the trustee. CNL issued an insurance certificate to the law firm, dated February 1, 1987, naming Delta Care as policyholder and Waldrip as certificate holder.
The documents in evidence do not show clearly one way or the other that Delta Health and Delta Care were "engaged in the business of making contracts of insurance." We believe that this is a factual issue which was inappropriate for resolution by summary judgment. Consequently, we reverse the judgment against Delta Health Network, Inc. and Delta Care Group Trust and remand the matter for a determination of whether either or both are "insurers" and subject to the provisions of La.R.S. 22:657. We pretermit a decision on assessment of appeal costs until the liability of Delta Health and Delta Care has been determined.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED