DENNIS R. BAGNERIS, SR., Judge.
Albert and Joann Witeoskie (“Witco-skies”), and Nancy Ruiz Ott (“Ott”), appellants, seek to reverse the trial court’s judgment granting a motion for summary judgment in favor of Essex Insurance Company.
Michael Witeoskie, Cara LoPiccolo and Santana Meaux were employees at the Louisiana Pizza Kitchen that were shot and killed in a robbery on December 1, 1996 at the restaurant. The Witcoskies filed a lawsuit on their behalf and on behalf of their son Michael Witcoskie’s estate for damages, and Ott on behalf of her son Santana Meaux’s estate, against LPK Systems Inc., Gourmet Pizza Inc., d/b/a Louisiana Pizza Kitchen, Michael Friedj, Vasek Kaltakdjian and their insurer Travelers Insurance Company who was later substituted by Essex Insurance Company.
Essex Insurance Company filed a motion for summary judgment based on the exclusions contained in the policy that precludes coverage and recovery under the policy for (1) assault and battery, (2) intentional acts of an insured, (3) negligent hiring and/or supervision, (4) bodily injury to an employee. [ gThe trial court granted the motion for summary judgment. The trial court held that the “bodily injury to an employee” exclusion and the “intentional acts of an insured” exclusion were applicable to the case and as such precluded recovery by the Witcoskies. The Witco-skies and Ott appeal from this judgment. Cara LoPiccolo’s family did not seek an appeal.
On appeal, the Witcoskies and Ott contend that the trial court erred in granting Essex’s motion for summary judgment and *40 for holding that the policy’s exclusion for bodily injuries to employees was applicable, excluding coverage. The Witcokies and Ott argue that the question of whether Michael Witcoskie and Santana Meaux’s were “employees” in the course of their employment at the time of their murder, is a question of fact, material to the case, and therefore sufficient to preclude summary judgment.
Further, the Witcoskies and Ott argue that the trial court erred in holding that the policy’s exclusion was applicable, because Michael Witcoskie and Santana Meaux were not in the course and scope of their employment at the time of their murders, and therefore should not have been considered an “employee” as defined by Mundy v. Department of Health and Human Resources, 593 So.2d 346 (La.1992). Also, the Witcoskies and Ott argue that whether Michael Witcoskie and Santana Meaux were within the course and scope of their employment is a material question of fact that is sufficient to preclude the motion for summary judgment.
Ott further argues that the trial court erred in finding that the insurance policy submitted by Essex Insurance to the trial court in support of its motion for summary judgment is the same insurance policy issued by Essex Insurance to Gourmet Pizza and as such is a material question of fact that is sufficient to ^preclude the motion for summary judgment. We pretermit discussion of this issue and only will address the issue of whether the trial court erred in granting the motion for summary judgment filed by Essex.

LAW

Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d 318 (La.1993). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted, if any, show there is no genuine issue of material fact such that the mover is entitled to judgment as a matter of law. La. Code Civ.P. art. 966.
A fact is material if it is essential to plaintiffs cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Generally, material facts are those that potentially insure or preclude recovery, affect the litigant’s ultimate success, or determine the outcome of the legal dispute. Prado v. Sloman Neptun Schiffahrts, A. G., 611 So.2d 691, 699 (La.App. 4 Cir.1992), writ not considered, 613 So.2d 986 (La.1993).
A dispute as to the issue of whether, as a matter of law, the language in an insurance policy provides coverage to a party can properly be resolved within the context of a motion for summary judgment. Domingue v. Reliance Insurance Co., 619 So.2d 1220 (La.App. 3 Cir.1993).
Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed facts shown by the evidence supporting the motion, under which coverage could be afforded. Westerfield v. LaFleur, 493 So.2d 600 (La.1986); Gaspard v. Northfield Ins., 649 So.2d 979 (La.App. 3 Cir.1994).
The purpose of liability insurance is to afford the insured protection from damage claims and policies should be construed to effect, and not to deny, coverage. Reynolds v. Select Properties, Ltd., 634 So.2d 1180 (La.1994). A provision, which seeks to narrow the insurer’s obligation, is *41 strictly construed against the insurer. Garcia v. St. Bernard Parish School Board, 576 So.2d 975 (La.1991). However, insurance companies have the right to limit coverage in any manner they desire, as long as the limitations do not conflict with statutory provisions or public policy. Gunn v. Automotive Casualty Insurance Co., 614 So.2d 154 (La.App. 3 Cir.1993). As our Supreme Court stated in Reynolds, supra at 1183.
“The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties.... ”
The purpose of the intentional injury exclusion is to restrict liability insurance coverage by denying coverage to an insured in circumstances where the insured acts deliberately and intends or expects bodily injury to another. The exclusion is “designed to prevent an insured from acting wrongfully with the security of knowing that his insurance company will ‘pay the piper’ for the damages.” Trans-america Ins. Group v. Meere, 148 Ariz. 351, 694 P.2d 181, 186 (1984). Accord, United Servs. Auto. Ass’n v. Elitzky, 358 Pa.Super. 362, 517 A.2d 982 (1986).
The purpose of liability insurance, on the other hand, is to afford the insured protection from damage claims. Policies should be construed to effect, not deny, coverage. Borden, Inc. v. Howard Trucking Co., Inc., 454 So.2d 1081, 1090 (La.1983); LeJeune v. Allstate Ins. Co., 365 So.2d 471, 479 (1978). And an exclusion from coverage should be narrowly construed. Snell v. Stein, 261 La. 358, 259 So.2d 876 (1972).
The effect of the language used in this exclusion clause is not always clear. In fact, when construed in light of the myriad fact situations to which it has been applied, it is often ambiguous. See Annot. Construction and application of provision of liability insurance policy expressly excluding injuries intended or expected by insured, 31 A.L.R.4th 957, 978 n. 1 (1984). This Court noted in Pique v. Saia, 450 So.2d 654, 655 (1984) that the clause is indeed ambiguous.
Ambiguity in an insurance contract must be resolved according to the general rules governing contract interpretation. Albritton v. Fireman’s Fund Ins. Co., 224 La. 522, 70 So.2d 111 (1953). Unless ambiguous, words used in an insurance contract will be given their commonly prevailing meaning. La.Civ.Code art. 2047. Ambiguous policy provisions are to be construed against the confector, the insurer. La.Civ.Code art. 2056; Salomon v. Equitable Life Assurance Soc’y of U.S., 202 La. 1001, 13 So.2d 329 (1943). Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered. See La. Civ.Code art. 2045.
This clause does not by its precise terms exclude coverage for bodily injury caused by the insured’s intentional act. Rather, it excludes coverage Rfor bodily injury “expected or intended from the standpoint of the Insured.” The phrase “bodily injury ... which is expected or intended,” emphasizes that an excluded injury is one which the insured intended, not one which the insured caused, however intentional the injury producing act. The next phrase, “from the standpoint of the Insured,” emphasizes again that it is the insured’s subjective intention and ex *42 pectation, which delimit the scope of the exclusion. The subjective intention and expectation of the insured determine which injuries fall within and which fall beyond the scope of coverage under this policy. Breland v.Schilling, 550 So.2d 609 (La.1989).
This inquiry into the subjective intention or expectation of the insured contrasts sharply with the traditional tort inquiry into an actor’s intent. The Restatement (Second) of Torts describes intended consequences as those which the actor knows are “substantially certain” to result from an act, whether the actor consciously desires those consequences or not. Restatement (Second) of Torts § 8A (1965); see also W. Prosser, Law of Torts § 8 (4th ed.1971). While the inquiry regarding intentional torts asks which consequences an objective reasonable person might expect or intend as the result of a deliberate act, we are concerned, under the language of this insurance contract, with the injury subjectively intended or expected by the insured. Breland, supra.
The field of criminal law, like Civil Law tort principles, adheres to an objective standard for identifying an actor’s intent. That standard looks to the natural and probable consequences of an act for determining whether the actor intended the actual result. La.R.S. 14:10.
^Furthermore, the inquiry into whether injuries are “intended or expected” by an insured under the terms of an insurance contract differs from the inquiry into whether an act is “intentional” under the worker’s compensation statute’s intentional acts exception to a co-employee’s tort immunity. See La.R.S. 23:1032. Although the worker’s compensation statute ordinarily limits to compensation the recovery available to an employee who suffers an on-the-job injury, the statute makes an exception for injuries produced by an employer’s or co-employee’s “intentional act.” The statute provides, in pertinent part:
Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act. (Emphasis added). La.R.S. 23:1032.
In Bazley v. Tortorich, 397 So.2d 475, 480-81 (La.1981), this Court addressed the meaning of this statute’s “intentional act” language opining that the statute’s “intentional act” exception mirrored the traditional distinction between intentional torts and negligence in common law. Id. at 480. The Court emphasized that in both the criminal and tort fields, “intent” refers to the consequences of the act, rather than to the act itself. Citing to Prosser and the Restatement (Second) of Torts, the Court held:
The meaning of intent in this context is that the defendant either desired to bring about the physical results of his act or believed they were substantially certain to follow from what he did.... If the actor knows that the consequences are certain, or substantially certain, to result from his act, | sand still goes ahead, he is treated by the law as if he had in fact desired to produce the result.
Bazley, supra, at 482. Bazley thus instructs that the tort-based intent standard should determine whether an act is intentional under La. R.S. 23:1032.
This tort-based standard exposes the actor to liability for injuries he did not in fact specifically envision or desire to produce. Thus, in Caudle v. Betts, 512 So.2d 389, 392 (La.1987), when a company officer administered an electric shock to a worker, intending to play a good-natured practical *43 joke, yet nonetheless producing serious injury to the victim, the Supreme Court held the actor liable for all consequences flowing from his act. “The defendant’s liability (under La. R.S. 23:1032) for the resulting harm extends ... to consequences which the defendant did not intend, and could not reasonably have foreseen.... ” Caudle, supra. at 392. By contrast, the contract of insurance between this defendant and his insurer excludes coverage only for those injuries, which the defendant subjectively desired to inflict.
A decision by the Montana Supreme Court, Millers Mutual Ins. Co. v. Strainer, 204 Mont. 162, 663 P.2d 338 (1983), speaks directly to the distinction between the “intentional act” exception to a coworker’s tort immunity and the exclusion for “intended” bodily injury found in liability policies. As in our case of Caudle v. Betts, supra, a practical joke led to consequences, which were clearly not intended by the insured. The injured employee sued the co-employee in tort relying upon the intentional act exception to co-workers’ tort immunity under Montana’s worker’s | gcompensation statute. When the tortfea-sor third-partied his homeowner’s liability insurer, the insurer argued that an intentional act under the statutory exception to co-worker tort immunity necessarily precluded coverage under the insurance policy’s intended bodily injury exclusion clause. The Court disagreed, noting the difference between the statute’s exception to tort immunity and the policy’s exclusion for intended bodily injury:
(T) he insurance policy does not exclude intentional acts but only excludes bodily injury, which is intended....
(I)ntentional acts are not excluded under an insurance policy unless the intentional act results in injuries, which would be expected or intended. A person may act intentionally without intending or expecting the consequences of that act. Id. 663 P.2d at 340, 341.
The Montana Supreme Court ordered the insurer to defend the insured and to provide coverage in event of a judgment.
Other courts have looked to the subjective intentions and expectations of the insured when resolving the ambiguity of this intended injury exclusion clause. The Supreme Court of Maine held that the exclusion “refers only to bodily injury that the insured in fact subjectively wanted (‘intended’) to be a result of his conduct or in fact subjectively foresaw as practically certain (‘expected’) to be a result of his conduct.” Patrons-Oxford Mutual Ins. Co. v. Dodge, 426 A.2d 888, 892 (Me.1981) (emphasis in original).
With these principles in mind, we will proceed to interpret the insurance policy at issue in the case sub judice.
The Commercial Liability General Liability Policy contained the following exclusions:
EXCLUSIONS
This insurance does not apply to:
(a) “Bodily injury” or “property damage” expected or intended from the standpoint of the insured.
This exclusion does not apply to “bodily injury” resulting from the use of force to protect persons or property.
(b) “Bodily injury” to:
(1) An Employee of the insured arising out of and in the course of employment by the insured; or
This exclusion applies:
(1) Whether the insured may be liable as an employer or in any other capacity; and
(2) To any obligation to share damages with or repay someone else *44 who must pay damages because of the injury.

EMPLOYERS’S LIABILITY EXCLUSION AMENDED

Also, the policy in question contained the following pertinent amended exclusions:
Employer’s Liability under 2 e. Exclusions, Commercial General Liability Coverage Insurance, Section I.
This insurance does not apply to any claim, suit, cost or expense arising out of “bodily injury” to
(1) Any employee of the Named insured arising out of and in the course of employment by any insured or while performing duties related to the conduct of the insured business, or
(2) The spouse, child, parent, brother, sister or relative of that employee as a consequence of (1).
This exclusion applies whether an insured may be liable as an employer or in any other capacity, and/or to any obligation to share damages with or repay someone else who must pay damages because of the injury, as well as liability assumed under any “Insured Contract.”
.This exclusion applies to the entire policy, and where there is no coverage there is no duty to defend.
7. EXCLUSIONS
Where there is no coverage under the policy, there is no duty to defend. This insurance does not apply to any claim. Suit, cost or expense arising out of:
|„D. ASSAULT AND/OR BATTERY
Assault and or Battery or any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured’s employees, patrons or any other person.
E. HIRING AND OR SUPERVISION
Charges or allegation of negligent hiring, training, placement or supervision.
After careful review of the record in its entirety, we find that the issue of whether Michael Witchoskie and Santana Meaux were “employees” in the course of their employment at the time of their murders at the Louisiana Pizza Kitchen is not a question of fact which precludes summary judgment. Further, we find -that murders of Michael Witcoskie and Santana Meaux were not intended or expected from the “standpoint of the insured”.
We further find that both the “bodily injury to an employee” exclusion and the “intentional acts of an insured” exclusion are applicable to the case and as such precluded recovery by the Witcoskies and Ott.

CONCLUSIONS

Accordingly, the judgments of the trial court are affirmed.

AFFIRMED.